In the Matter of the REPORT OF THE SEPTEMBER 1968 MONROE COUNTY SUPREME COURT GRAND JURY.

Fourth Department, June 27, 1969.

222

*Robert Feldman, Corporation Counsel,* for appellants.

*John C. Little, Jr., District Attorney (Jack B. Lazarus* of counsel), for respondent.

*Per Curiam.* This is an appeal by certain public officers and municipal employees to review Special Term's order which accepted the report of the September 1968 Monroe County Supreme Court Grand Jury, submitted pursuant to section 253-a of the Code of Criminal Procedure. The Grand Jury conducted a John Doe investigation into the affairs and procedures of the Department of Buildings and Property Conservation, the Department of Urban Renewal and Economic Development and the Bureau of Purchase and Supply of the City of Rochester. The jury's presentment criticized and condemned certain practices, made various recommendations for changes in procedures and specifically named certain employees who should receive " appropriate disciplinary action ". There was no specificity as to the nature or character of the disciplinary action, and there was no recommendation that any of the employees be removed from office or suspended.

The Grand Jury had before it the report of a 1965 Grand Jury investigation of the same departments. That report contained many charges of mismanagement, inefficiencies, derelictions and abuses which it properly condemned and further made recommendations to correct and improve the operation of the departments. The report before us referred to these mat-

ters and concluded that the "majority" of the recommendations had "been carried out in fact and in spirit to a gratifying degree". The jurors found, however, that many of the earlier recommendations had been ignored or neglected. They noted that a new Commissioner of Buildings and Property Conservation had been appointed in January, 1968 and that under his supervision certain divisions of control were established and many changes made in the personnel responsible for the functions of the various divisions. This reorganization resulted in new administrative procedures designed to expedite compliance with code regulations, to improve record keeping and gave promise of the elimination of the many inefficient, loose and dilatory practices of the past. It also eliminated alleged illegal procedures which made possible unethical conduct on the part of personnel. The report noted that employees were more highly civil service than in 1965 and that the practice of appointments with provisional status as a device for circumventing the appointment of qualified persons was greatly diminished. It also reported that the haphazard method of hiring contractors, indications of partiality and preferential treatment in their selection, and the failure to comply rigidly with bid requirements were substantially reduced and the old practice of recommending to property owners certain repair contractors was explicitly forbidden. The jurors were impressed with the forthright admissions of the Commissioner of the need for definite changes in practices and personnel and also by his stated resolve to make improvements as quickly as his understaffed personnel could effect them.

The report justly criticized the actions of certain employees and recommended procedures which, in the judgment of the jurors, would eliminate these practices. A copy of the report was served upon each public officer and employee named or identifiable as required by section 253-a (subd. 3, par. [a]) of the Code of Criminal Procedure. The Commissioner and each of the persons referred to are therefore fully acquainted with the criticisms levelled at them in the report. This fact should have a most positive constructive effect. The Grand Jury has rendered a fine and meritorious public service by its investigation and many of the recommendations made in its report.

The Grand Jury having found no criminal responsibility, the sole question before us is whether the several specified assertions of neglect, impropriety, laxity, derelictions, and inefficient procedures are of sufficient gravity, and so contrary to the general interests of the public, as to be qualified as mis-

conduct and nonfeasance which would justify making the presentment a public record. The test of whether the report shall be sealed or filed as a public record depends upon the presence in the presentment of matters "concerning non-criminal misconduct, nonfeasance or neglect in office by a public officer or employee as the basis for a recommendation of removal or disciplinary action" (§ 253-a, subd. 1, par. [a]) and which "is based upon facts" and "is supported by the preponderance of the credible and legally admissable evidence" (§ 253-a, subd. 2, par. [a]).

Notwithstanding the salutary effect of many of the recommendations, we do not find the requisite "preponderance of the credible and legally admissable evidence" to support publicly opening the report. The presentment candidly admits that many of its charges are made by reason of "repeated rumors of bribery — accusations relating to bribes and kickbacks — favoritism — collusion". If supported by admissible proof, these would not be mere irregularities but would be violations of the Penal Law and would warrant indictments. Suspicion, mistrust, uncertainty, doubt, innuendo and skepticism, even though engendered by the best of motives, are not "facts". A Grand Jury report, like the action of any jury, must be premised only upon properly relevant and legally admissible evidence.

The presentment outlined the myriad of departmental problems and made recommendations to achieve hoped for improvements. The jurors performed a good "housekeeping" function which should clean up the operations of the departments and substantial public benefit should inure from their deliberations. A continuation of some of the practices which deserve moral condemnation and which fall far short of the essential high standard of performance, or a recurrence of the abuses which have been discontinued would, indeed, justify making public the findings of some future Grand Jury which might be convened to inquire into the operations of these departments of city government. The responsibilities of these departments are so great and have so vital a bearing on the health and welfare of the community that eternal vigilance and constant concern in their operations should be exercised. Chief Judge FULD cogently summed up the principle which should be the guideline for the conduct of all public servants when he wrote in *Matter of Wood* v. *Hughes* (9 N Y 2d 144, 155–156): "It is indisputable that public officers be held to a high standard of performance. It is also indisputable that free and open criticism of the conduct of public office is part of the very lifeblood of our

democracy ". Completely concurring, as we do, in this statement, we nevertheless find that the order appealed from should be reversed and the report sealed and not filed as a public record.

GOLDMAN, P. J., DEL VECCHIO, MARSH, GABRIELLI, and BASTOW, JJ., concur.

Order unanimously reversed without costs and report sealed.